30 F.3d 131
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Niecy CHANEY, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
John H. SIMMS, a/k/a John John, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
Carl TATE, Defendant-Appellant.
 Nos. 93-5506, 93-5562, 93-5686.
 United States Court of Appeals, Fourth Circuit.
 Argued: May 13, 1994.
Decided: July 14, 1994.
 
 Appeals from the United States District Court for the Northern District of West Virginia, at Wheeling. Frederick P. Stamp Jr., Chief District Judge.
 ARGUED: Brent E. Beveridge, Fairmont, WV, for appellant Chaney.
 Vito Mussomeli, Summerhill Law, Morgantown, WV, for appellant Simms.
 Carl Ellsworth Paul, Jr., Goodwin, Dodd & Paul, Wheeling, WV, for appellant Tate.
 Paul Thomas Camilletti, Asst. U.S. Atty., Wheeling, WV, for appellee.
 ON BRIEF: Franklin D. Cleckley, Morgantown, WV, for appellant Simms.
 David E. Godwin, Acting U.S. Atty., Thomas O. Mucklow, Asst. U.S. Atty., Wheeling, WV, for appellee.
 N.D.W.Va.
 Before PHILLIPS and NIEMEYER, Circuit Judges, and HILTON, United States District Judge for the Eastern District of Virginia, sitting by designation.
 OPINION
 PER CURIAM:
 
 
 1
 In these consolidated appeals, Niecy Chaney, John Simms, and Carl Tate (collectively, "appellants") challenge the sentences imposed upon them following their pleas of guilty to various drug-trafficking offenses. We affirm.
 
 I.
 
 2
 In August of 1992, appellants and 9 other persons were indicted in the Northern District of West Virginia on multiple counts of drug trafficking and other related offenses, including racketeering, money laundering, mail fraud, and income tax evasion. The indictment alleged that Simms had organized and directed a criminal enterprise which distributed significant amounts of crack cocaine in the Fairmont, West Virginia, area between 1986 and 1992, and that Chaney and Tate had been active participants in that criminal enterprise.
 
 
 3
 Appellants entered pleas of guilty to certain of the counts against them, pursuant to separate plea agreements with the government, and were duly sentenced after separate sentencing hearings. They then filed these appeals, which challenge their sentences but not their underlying convictions. We consolidated the appeals for briefing and argument.
 
 II.
 
 4
 Chaney pled guilty to one count of money laundering and was sentenced to 60 months in prison. She now challenges that sentence on two grounds. We find no merit in either and therefore affirm her sentence.
 
 A.
 
 5
 Chaney claims first that the district court violated her Due Process rights by sentencing her on the basis of inaccurate information. Her primary complaint is that the district court improperly considered the presentence report's allegation that she was involved in the distribution of 156.6 grams of crack, which she says was inaccurate.[1] Our review of the record convinces us that this claim provides no basis for setting aside Chaney's sentence.
 
 
 6
 The allegation in question was made in a 27-page addendum to the presentence report, captioned "United States' Version of the Offense," which described in great detail the criminal activities of the entire Simms organization and attempted to calculate the precise amount of drugs with which each member of that organization had been involved. Chaney's counsel filed a written objection to the entire addendum, in which he specifically stated that the "proper version of the offense conduct" was that contained in the portion of the presentence report captioned "Probation Officer's Independent Determination of Facts." At sentencing, the district court noted Chaney's objection to the version of the offense contained in the addendum and indicated initially that it was not going to take that version into account in sentencing. The court later clarified that ruling, stating that it would receive the entire addendum into evidence, but that it found the addendum's version of the offense to be accurate, and would consider it in sentencing Chaney, only to the extent it was corroborated by the statement of IRS Agent Sandy and the probation officer's independent findings, both of which Chaney conceded to be accurate. The court specifically stated that it would not consider the addendum's allegation that Chaney was responsible for 156.6 grams of crack, which Chaney claimed was inaccurate and the government admitted it could not substantiate, because it was not necessary to look at exact drug quantity in imposing sentence for the pre-guideline money-laundering offense to which she pled guilty. On this record, we think Chaney has failed to carry her burden of proving that the district court relied on the challenged information in sentencing her. That the information may have been inaccurate therefore provides no basis for setting aside her sentence. See United States v. Rachels, 820 F.2d 325, 327-28 (9th Cir.1987) (presentation of inaccurate information at sentencing provides basis for setting aside sentence only if defendant establishes that the sentencing court relied, at least in part, on the challenged information in imposing that sentence).[2]
 
 B.
 
 7
 Chaney argues next that the district court abused its discretion in imposing a 60-month sentence for the $180 money laundering offense.[3] Her specific complaint is that the district court failed to consider alternatives to incarceration, like probation and community service, and that it failed to articulate the reasons why it selected the particular sentence that it did.
 
 
 8
 We find no abuse of discretion here. The district court specifically stated on the record that it was basing its sentence upon the statements of IRS Agent Sandy and the independent findings of the Probation Officer, both of which Chaney's counsel conceded were factually accurate. Those statements indicated that, in addition to participating in the $180 money-laundering transaction to which she had pled guilty, Chaney had been assisting Simms in his drug distribution business by receiving cocaine shipments from him, distributing them to his runners, and wiring him the proceeds. The district court was entitled to consider this undisputed evidence of more extensive criminal conduct by Chaney in selecting an appropriate sentence for her from among the range of sentences available for the count to which she had pled guilty. Under these circumstances, we cannot agree with Chaney that the district court abused its discretion in selecting a sentence of five years in prison, given that the maximum sentence available was 20 years.
 
 III.
 
 9
 Simms pled guilty to one count of operating a continuing criminal enterprise, one count of mail fraud, one count of income tax evasion, and one count of money laundering, and was sentenced to concurrent terms of 360, 60, 60, and 240 months in prison, respectively. He now challenges his sentence on two grounds. Finding no merit in either, we affirm his sentence.
 
 A.
 
 10
 Simms argues first that the district court erred in disposing of his various objections to the presentence report without holding an evidentiary hearing or making specific findings of fact. He relies on U.S.S.G. Sec. 6A1.3(a), which states that "[w]hen any factor important to the sentencing determination is reasonably in dispute, the parties shall be given an adequate opportunity to present information to the court regarding that factor." He says that he made written objections to a number of statements in the presentence report that were relevant to the sentencing determination, but that the district court failed to hold an evidentiary hearing on these objections, to make specific findings concerning them, or to permit him to discuss them in any depth. As a result, he contends, he was denied a fair opportunity to be heard on his objections to the presentence report.
 
 
 11
 We disagree. Simms filed only two written objections to the presentence report: Objection No. 1, which took issue with the probation officer's finding that he was not entitled to a three-level reduction for acceptance of responsibility; and Objection No. 2, which took specific issue with a number of different aspects of the government's version of the offense. At Simms' sentencing hearing, the district court acknowledged these two objections and invited his counsel to expand upon them, which he did. The district court then overruled both objections, the first because it found that Simms' acceptance of responsibility came too late and the second because it decided not to take the controverted matters in the government's version of the offense into account in sentencing Simms, but to rely instead on the version of the offense prepared by the probation officer, as to which Simms had stated that he had no objection. Simms' counsel offered no objection to either ruling and made no further effort to be heard on his objections to the presentence report. The district court then announced its tentative findings as to the applicable guidelines, and gave Simms' counsel an opportunity to object to those proposed findings before imposing sentence. On this record, we conclude that the district court provided Simms a full and fair opportunity to be heard on his objections to the presentence report.[4]
 
 B.
 
 12
 Simms argues next that the district court erred in denying his motion to compel the government to make a motion for a substantial assistance departure under U.S.S.G. Sec. 5K1.1. He contends that the government deliberately led him to believe that it would make such a motion on his behalf, in order to induce him to plead guilty and cooperate, and that the district court erred in not holding it to its word.
 
 
 13
 We disagree. As a general matter, the decision whether to make a Sec. 5K1.1 motion is committed to the "unbridled discretion" of the prosecutor, and "no amount of 'substantial assistance,' standing alone," will obligate him to make such a motion. United States v. Dixon, 998 F.2d 228, 230 (4th Cir.1993). This court has recognized two limits on that discretion: (i) the prosecutor may not withhold a Sec. 5K1.1 motion for an unconstitutional reason, and (ii) he may not withhold a Sec. 5K1.1 motion that he is obligated to make by the terms of a valid contractual agreement with the defendant. See United States v. Wallace, 22 F.3d 84 (4th Cir.1994); Dixon, 998 F.2d at 230-32. The burden of establishing that the prosecutor's refusal to make a motion violates one of these two limitations on his discretion is on the defendant who seeks to compel him to make such a motion. United States v. Eagan, 966 F.2d 328, 332 (7th Cir.1992); Dixon, 998 F.2d at 230. Simms has failed to carry that burden here.
 
 
 14
 The district court specifically found that Simms had not shown that the government's refusal to make a Sec. 5K1.1 motion was motivated by an unconstitutional purpose. Simms does not challenge that finding on appeal. Instead, he contends, as he did below, that the government's refusal to make the motion breached a contractual agreement between himself and it. But the record does not support his assertion that any such agreement was ever made. It is undisputed that the plea agreement itself contained no promise by the government to move for a substantial assistance departure, but was completely silent with respect to such departures. Compare Dixon, 998 F.2d at 229 (written plea agreement contained provision explicitly obligating prosecutor to make a Sec. 5K1.1 motion if the defendant provided assistance that the prosecutor found to be substantial); United States v. Conner, 930 F.2d 1073, 1074 (4th Cir.) (same), cert. denied, --- U.S. ----, 112 S.Ct. 420 (1991); see United States v. Coleman, 895 F.2d 501, 506 (8th Cir.1990) (absence of an "express promise" to file a Sec. 5K1.1 motion in a plea agreement "is clear evidence that such a promise was not made"). While Simms alleges that the government made oral promises to make such a motion during the plea negotiations, the record belies that assertion. The written record of the plea negotiations between Simms and the government makes clear that the prosecutor repeatedly advised Simms' counsel that the government would not bind itself contractually to make a Sec. 5K1.1 motion, even if Simms agreed to plead guilty and cooperate.[5] The written plea agreement contains a merger clause stating that it "constitute[s] the entire agreement between Mr. Simms and the United States of America in this matter," and that "[t]here are no agreements, understandings or promises between the parties other than those contained in this agreement." And Simms himself specifically conceded during the Rule 11 plea hearing, after the terms of the plea agreement were summarized for him, that he had no "other side agreements or ... other deals with the Government that are not contained in this plea agreement." Under these circumstances, we conclude that the government did not obligate itself, in either the plea agreement or the negotiations leading up to it, to make a Sec. 5K1.1 motion if Simms rendered substantial assistance.[6]
 
 
 15
 We have no doubt that Simms did in fact enter his plea and cooperate in the hopes of securing a Sec. 5K1.1 departure. But such a unilateral intention on the part of the defendant cannot impose upon the United States a contractual obligation to make such a motion, absent evidence that the United States made an express or implied promise to do so. Because we find no evidence that any such promise was made here, and no evidence that the government refused to make the motion for unconstitutional reasons, we must reject Simms' argument that the district court erred in denying his motion to compel the government to make a Sec. 5K1.1 motion.
 
 IV.
 
 16
 Tate pled guilty to one conspiracy count and was sentenced, for that conviction and three others from an earlier indictment, to four concurrent terms of 188 months in prison. He now challenges that sentence on the ground that it was based on clearly erroneous factual findings. Specifically, he contends that the district court erred in finding (i) that he was involved in the distribution of three ounces of crack in May of 1990 and four ounces of crack in July or August of 1990, and (ii) that he was involved in the distribution of crack cocaine, as opposed to powder cocaine. We find the evidence sufficient to support both findings and therefore affirm Tate's sentence.
 
 V.
 
 17
 For the reasons given above, the sentences imposed upon Chaney, Simms, and Tate are
 
 
 18
 AFFIRMED.
 
 
 
 [1]
 Chaney also claimed below that her sentence should be set aside because it was based in part on some additional information that she alleged to be inaccurate: the government's assertions that she had not been completely cooperative and truthful in her dealings with it and that she was an unfit mother. The district court rejected this claim on the ground that it had not relied upon these alleged misrepresentations in sentencing her, and Chaney does not appear to challenge that holding on appeal. To the extent her Tucker claim on appeal is based on this set of alleged misrepresentations, however, we reject it for the same reason that the district court did: that the court did not rely upon that information in sentencing her. See United States v. Rachels, 820 F.2d 325, 327-28 (9th Cir.1987) (presentation of inaccurate information at sentencing provides basis for setting aside sentence only if defendant establishes that the sentencing court relied, at least in part, on the challenged information in imposing that sentence)
 
 
 [2]
 Chaney also argues that the district court failed to comply with its Rule 32(c)(3)(D) obligation to address each of her claims of factual inaccuracy in the presentence report by either making a finding as to the accuracy of the controverted fact or stating that no such finding was necessary because the court would not take that fact into account in sentencing. We disagree. The district court's statements about the extent to which it would consider the information contained in the addendum at sentencing were more than adequate to discharge its Rule 32(c)(3)(D) obligation. See United States v. Hill, 766 F.2d 856, 858 (4th Cir.), cert. denied, 474 U.S. 923 (1985) (to satisfy Rule 32(c)(3)(D), district court need not make a finding that each controverted fact is either true or not true, so long as it states on the record how it is treating each such fact for purposes of sentencing)
 
 
 [3]
 Because the criminal charge to which Chaney pled guilty occurred prior to November 1, 1987, her sentencing was not subject to the Sentencing Guidelines
 
 
 [4]
 Simms also appears to be arguing that the district court failed to comply with its Rule 32(c)(3)(D) obligation to state on the record how it was treating all controverted matters at sentencing. We reject this argument. The district court clearly and unambiguously stated, on the record, that it was resolving the issue of the timeliness of Simms' assistance against him, and that it did not find it necessary to resolve the various disputes between Simms and the government with respect to the details of the offense, because it was not taking the matters in dispute into consideration in sentencing. Rule 32(c)(3)(D) requires no more. See United States v. Hill, 766 F.2d at 858
 
 
 [5]
 On April 23, 1992, Simms' counsel wrote to the prosecutor, indicating that Simms was willing to plead guilty and cooperate in order "to qualify for Sec. 5K1.1 treatment." The prosecutor responded that the government was willing to open plea negotiations and that it would agree to recommend a two-level reduction for acceptance of responsibility if Simms pled guilty and cooperated fully. But he stated specifically that the government would not agree to include any "language concerning Sec. 5K1.1 ... in any plea agreement," that the decision whether to make a Sec. 5K1.1 motion would remain "entirely within the discretion of the United States Attorney," and that "no contractual right to such a Motion will be created in our negotiations." Simms' counsel then wrote back to the prosecutor, indicating that Simms was willing to plead guilty in exchange for a guarantee that he would be sentenced at a certain guideline offense level. The prosecutor responded that it could make no guarantees with respect to offense level and that if Simms "want[ed] to shoot for" a sentence at that level, he should make an effort to provide substantial assistance. Once again, however, the prosecutor specifically cautioned that the government was not promising to make a Sec. 5K1.1 motion if Simms did provide such assistance:
 As you know, we cannot make any promises as to whether a Sec. 5K1.1 motion for departure would be made; however, if your client enthusiastically embraces the concept and provides assistance, the United States Attorney will review it and consider a departure motion under ... Sec. 5K1.1. Again, this offer to consider substantial assistance by Mr. Simms does not create any contractual right. We are simply stating that Sec. 5K1.1 is available to Mr. Simms as it would be to any other defendant.
 Supp.App. 1-6 (emphasis added).
 
 
 [6]
 Simms also argues that after he signed the plea agreement and entered his plea, but before he rendered the assistance in question, he and the AUSA entered into an oral agreement that modified the terms of the written plea agreement and bound the government to make a Sec. 5K1.1 motion. We find no evidence in the record to support this assertion; indeed, the undisputed evidence is that the AUSA did nothing but explain the meaning of "substantial assistance" to Simms, and that he did so at Simms' own request. Under these circumstances, we do not think Simms has proved the existence of an oral agreement to make aSec. 5K1.1 motion. See United States v. Favara, 987 F.2d 538, 539 (8th Cir.1993) (AUSA's oral statement that assistance provided by defendant "would not go unrewarded" was not sufficient to give rise to enforceable promise to move for a Sec. 5K1.1 departure, where the written plea agreement specifically stated that defendant's cooperation would not bind government to make such a motion)